**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 10 CR 239 |
| MICHAEL TAYLOR | Judge Thomas M. Durkin |

## MEMORANDUM OPINION AND ORDER

Michael Taylor is currently serving a 480-month term of imprisonment for being a felon in possession of a firearm in violation of 18 U.S.C. 922(g)(1). He filed a motion seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). *See* R. 124, 135. For the reasons set forth below, that motion is denied.

### Background

I.      Offense, Trial, and Sentencing

The following facts are derived from the Seventh Circuit's opinion on Taylor's appeal. *See United States v. Taylor*, 701 F.3d 1166, 1168–72 (7th Cir. 2012). On November 28, 2009, Taylor—a convicted felon—was at a party in Aurora, Illinois with his cousin Daniel Starks when a fight broke out. During the fight, the host, Derrick Smith, and his friend, Sean Parker, threatened to kill Starks. Starks heard gunshots as he fled the party; Taylor later told Starks he had fired out of concern for Starks' well-being. In the hours that followed, Taylor drove in his white Cadillac—along with his girlfriend, Starks, and Javaris Yankaway (Starks' half-brother)—to an apartment complex and the residences of Smith and Parker, where he fired shots from his Beretta firearm in response to what had occurred at the party.

Separately, on December 1, 2009, Taylor, Starks, and Javaris were together at Starks' residence when Roosevelt Yankaway (Starks' father and Taylor's uncle) told them that shots had been fired at his house and that he thought the shooters were allied with Smith and Parker. Enraged, Taylor got into the driver's seat of his white Cadillac, with Javaris in the front passenger seat and Starks and Roosevelt in the back seat, and began driving around Aurora. Starks later stated that both Taylor and Javaris were wearing gloves, and that he could see the outline of a gun in Roosevelt's pocket, which was consistent with the size and shape of the .380 caliber Bersa handgun he had previously seen Roosevelt carry. Starks watched as Taylor and Javaris fired shots out of the driver's window toward a passing blue Yukon SUV the men had been tracking. Taylor fired the Beretta, and Javaris fired a .357 revolver. After the shooting, the men drove to Roosevelt's residence, parking the Cadillac a few houses away.

A witness who was walking her dog nearby the shooting immediately called the police and reported having observed a shooting between a white Cadillac and a dark-colored SUV. After hearing the dispatch with information about the white Cadillac, three Aurora Police Department ("APD") officers traveled to Roosevelt's residence. APD officers had responded to a report of gunshots at Roosevelt's residence the night before, and recalled a light-colored Cadillac parked in the driveway. When the officers arrived at Roosevelt's residence, they observed Taylor, Javaris, and Roosevelt standing near a light-colored Cadillac in the driveway. The three men fled and were eventually arrested. Officers performed gunshot residue tests and recovered

the Bersa near where Roosevelt had been hiding, the revolver near the location of Javaris' arrest, and the Beretta and its magazine in an adjacent property. Forensic experts later determined that Taylor's left hand and the driver's side of the white Cadillac tested positive for gun shot residue. No latent fingerprints were found on the Beretta, but spent shell casings recovered from the locations of the shootings indicated that the gun had been fired.

On March 25, 2010, Taylor was charged with possessing a firearm (the Beretta) after having previously been convicted of a felony in violation of 18 U.S.C. § 922(g)(1) in connection with the December 1, 2009 shooting. A jury found him guilty on June 8, 2011, and the district court sentenced him on November 10, 2011. At sentencing, the district court found that his base offense level was 34 and his criminal history points totaled 23, putting him in criminal history category VI. The resulting guideline range was 262 to 327 months' imprisonment, with a mandatory minimum of fifteen years' imprisonment under the Armed Career Criminal Act. The government sought an upward variance based on the offense conduct and Taylor's criminal history, which included several violent felonies. The district court agreed, and after explaining its reasoning and considering the factors in 18 U.S.C. § 3553(a), sentenced Taylor to 480 months' imprisonment, nearly thirteen years above the high end of the guideline range.

II.   Appeal and Collateral Attacks

Taylor appealed his conviction and sentence, arguing that the district court erred in allowing the admission of the Bersa and the revolver, that the evidence was

not sufficient for a reasonable jury to find him guilty, and that the district court's above-guidelines sentence was unreasonable. The Seventh Circuit affirmed the district court in all respects. *Taylor*, 701 F.3d at 1175–76.

After his unsuccessful appeal, on July 16, 2013, Taylor filed a letter with the district court requesting the assistance of counsel in an anticipated collateral attack and described possible bases for such an attack. The district court characterized the letter as a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, and denied both his request for counsel and for relief on the merits. Four-and-a-half years later, Taylor sought leave to file a second or successive § 2255 petition based on newly discovered evidence of actual innocence, ineffective assistance of counsel, and various errors by the trial court. The Seventh Circuit dismissed the petition as unnecessary, holding that the district court erred in recharacterizing Taylor's July 2013 submission as a § 2255 petition without warning and permitting Taylor to lodge a new collateral attack.

Taylor filed a § 2255 petition on February 21, 2018 with three principal claims: (1) his trial counsel's failure to investigate his defense and present rebuttal expert testimony violated his Sixth Amendment right to effective assistance of counsel and a fair trial; (2) his trial counsel's failure to present mitigating evidence violated his Sixth Amendment right to effective assistance of counsel and Fifth Amendment right to due process at sentencing; and (3) newly discovered evidence of Starks' allegedly perjured testimony demonstrated Taylor's actual innocence. *Taylor v. United States*,

4

No. 13 CV 5183, 2019 WL 1489163, at *1–3 (N.D. Ill. Apr. 4, 2019). The Court denied that motion on April 4, 2019.

On January 21, 2025, Taylor again sought to file a second or successive § 2255 petition arguing that under *Erlinger v. United States*, 602 U.S. 821 (2024), the district court should not have sentenced him as an armed career criminal. The Seventh Circuit denied that request several days later, explaining that *Erlinger* had not been made retroactive. *Taylor v. United States*, No. 25-1092, ECF No. 2 (7th Cir. Jan. 29, 2025).

### III.  Motion for Compassionate Release

Taylor now moves for compassionate release, arguing that such relief is warranted based on: (1) disparities between the sentence he received and the one he would receive today under Guidelines Amendment 826 and *Erlinger*; (2) weaknesses in the evidence against him and errors before and at trial; (3) his chronic back pain; (4) his family circumstances; and (5) his rehabilitative efforts while incarcerated. R. 124, 135.

### Legal Standard

A court may modify a term of imprisonment upon a motion of the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). In determining whether a sentence reduction under § 3582 is appropriate, courts must look to (1) whether "extraordinary and compelling reasons" warrant a reduction; and (2) whether a reduction is

consistent with the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021) (explaining the two-step process for reviewing compassionate release motions). Courts should consider reasons for compassionate release cumulatively. *United States v. Vaughn*, 62 F.4th 1071, 1072–73 (7th Cir. 2023).

## Discussion

### I. Exhaustion

The government first contends that Taylor has not exhausted his administrative remedies because he only waited 28 days from the warden's denial of his request for compassionate release to file the present motion. But the statute provides that Taylor must wait "30 days from the *receipt* of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A) (emphasis added). The warden received Taylor's request for compassionate release on January 10, 2025. R. 124 at 8. Taylor filed this motion more than 30 days later, on March 11, 2025. Taylor has met the statutory exhaustion requirement.

### II. Extraordinary and Compelling Reasons

Congress has directed the Sentencing Commission to promulgate general policy statements regarding the appropriate use of the sentence modification provision set forth in 18 U.S.C. § 3582(c) and to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. §§ 994(a)(2)(C), (t). As relevant here, the Commission promulgated the policy statement at § 1B1.13 regarding the reduction in a term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), which was most

6

recently amended in 2023. Section 1B1.13 lists a number of circumstances under which extraordinary and compelling reasons exist for a sentence reduction. The Court discusses the relevant policy language with each of Taylor's arguments in turn.[1]

    a. Sentence Disparity

Taylor argues that there is a gross disparity between the sentence he received and the sentence he would receive today based on two changes in law. The only provision of § 1B1.13 under which the Court may consider changes in law is § 1B1.13(b)(6), which provides:

> UNUSUALLY LONG SENTENCE.— If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6); *see also* U.S.S.G. § 1B1.13(c) ("Except as provided in subsection (b)(6), a change in the law . . . shall not be considered for purposes of determining whether an extraordinary and compelling reason exists.").

Taylor first points to Amendment 826, which revised § 1B1.3 to exclude acquitted conduct from the scope of relevant conduct used in calculating a sentencing range under the Guidelines. But Amendment 826 went into effect on November 1,

---

[1] Taylor's argument in reply that extraordinary and compelling reasons "are no longer an absolute requirement," R. 134 at 3, is unfounded and directly contradicted by the statutory language and controlling precedent. *See* 18 U.S.C. § 3582(c)(1)(A)(i); *Thacker*, 4 F.4th at 576.

7

2024 and was not made retroactive. *See* U.S.S.G. § 1B1.10(d) (specifying which amendments apply retroactively and excluding Amendment 826). Because § 1B1.13(b)(6), by its terms, does not take into account "an amendment to the Guidelines Manual that has not been made retroactive," Amendment 826 does not assist Taylor.

Taylor also raises *Erlinger*, wherein the Supreme Court held that the Fifth and Sixth Amendments allow a defendant facing a § 924(e) enhancement to insist that a jury decide, unanimously and beyond a reasonable doubt, whether past offenses occurred on separate occasions, as required under the Armed Career Criminal Act. 602 U.S. at 834–35. As the Seventh Circuit explained in denying Taylor's request for leave to file a second or successive § 2255 petition, "[t]he Supreme Court has never said that *Erlinger* applies retroactively, applied it to any case on collateral review, or suggested that its rule is substantive (which could make it retroactive) rather than procedural (which would not)." *Taylor*, No. 25-1092, ECF No. 2 at 2.

Seventh Circuit precedent makes clear that "non-retroactive statutory changes or new judicial decisions" do not supply an extraordinary and compelling reason for relief under § 3582(c)(1)(A)(i). *United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022). This precedent governs over conflicting policy statements, like § 1B1.13(b)(6). *United States v. Black*, 131 F.4th 542, 546 (7th Cir. 2025) ("We hold that our interpretation of extraordinary and compelling prevails over the Commission's because the Commission exceeded its statutory authority."); *United States v. Hill*, No. 95 CR 730-1, 2025 WL 860067, at *4 (N.D. Ill. Mar. 19, 2025) (holding that the court is bound by

8

"the Seventh Circuit's prior holding that nonretroactive changes in the law, statutory or judicial, are not an extraordinary and compelling reason for a sentence reduction."). On that basis, *Erlinger* does not provide an extraordinary or compelling reason for compassionate release here. *See United States v. Tomkins*, No. 07 CR 227, 2025 WL 1042816, at *4 (N.D. Ill. Apr. 8, 2025) (Seventh Circuit precedent barred defendant from relying on nonretroactive Supreme Court decision to show his sentence is grossly disparate to the sentence he would have received today).

### b. Evidentiary Weaknesses and Trial Court Errors

Taylor also raises weaknesses in the evidence against him and purported errors at and before his trial in support of his motion. *See* R. 124 at 1–2 (discussing deficiencies in witness testimony and physical evidence and private investigator's findings); *id.* at 6 (challenging jury instruction regarding possession); *id.* at 7 (arguing that his counsel did not have enough time to prepare for trial). Taylor raised most of these arguments on appeal and in his collateral attacks. *See Taylor*, 701 F.3d at 1173– 74 (discussing sufficiency of the evidence at trial, including cooperator's testimony and physical evidence); *Taylor*, No. 13 CV 5183, 2019 WL 1489163, at *7 (discussing recanted testimony and private investigator's work); *Taylor*, 13 CV 5183, ECF No. 3 at 2 (discussing amount of time given to counsel to prepare for trial). Regardless, a compassionate release motion is not the proper vehicle to raise or relitigate purported trial court errors. *See United States v. Martin*, 21 F.4th 944, 946 (7th Cir. 2021) (holding that compassionate release statute cannot be used to challenge a sentence on grounds the defendant could have advanced on direct appeal). Put differently, a

claim of errors at or before trial is not an extraordinary and compelling reason for Taylor's release.

### c. Medical Conditions

Taylor also argues that his medical conditions supply an extraordinary and compelling reason for his release. The policy statement at § 1B1.13(b)(1) provides:

(1) MEDICAL CIRCUMSTANCES OF DEFENDANT.—

(A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(B) The defendant is —

(i) Suffering from a serious physical or medical condition,

(ii) Suffering from a serious functional or cognitive impairment, or

(iii) Experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

U.S.S.G. § 1B1.13(b)(1).

Taylor states that he suffers from back pain from a November 14, 2024 incident where he was in a transport vehicle that flipped over. Medical records cast some doubt on Taylor's claim of continued pain. Records indicate that at a follow-up visit in early

10

December, Taylor reported that he was "doing well" and was prescribed a three-day supply of Naproxen at his request, and at visits in February, March, and April, Taylor did not report any pain or injuries. R. 131 at 1–4, 12.

Even if Taylor's medical records corroborated his claim of ongoing back pain, he acknowledges that he treats his pain with over-the-counter pain relievers and muscle and joint balm. There is no suggestion that Taylor's pain amounts to a "serious physical or medical condition" that "substantially diminishes" his ability to take care of himself, much less a terminal illness or a medical condition that requires long-term or specialized care that is not being provided. U.S.S.G. § 1B1.13(b)(1)(B); *see, e.g.*, *United States v. Flores*, 2020 WL 7334272, at *3 (N.D. Ind. Dec. 14, 2020) (finding treatable medical conditions, including chronic pain, were not an extraordinary and compelling reason for release); *United States v. Bowling*, No. 2:16-CR-153-PPS, 2020 WL 4915665, at *3–5 (N.D. Ind. Aug. 21, 2020) (defendant's diabetes, anemia, high blood pressure, hyperlipidemia, back pain, and depression, for which she received adequate care, were not an extraordinary or compelling reason for her release). As such, Taylor's pain does not rise to the level of severity that would constitute an extraordinary or compelling reason for a reduced sentence.

### d. Family Circumstances

Taylor also seeks compassionate release based on certain family circumstances. The policy statement at § 1B1.13(b)(3) provides:

(3) FAMILY CIRCUMSTANCES OF THE DEFENDANT.—

(A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and

11

incapable of self-care because of a mental or physical disability or a medical condition.

(B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. . . .

U.S.S.G. § 1B1.13(b)(3).

Taylor notes that his 66-year-old mother is unwell. The record includes a letter from Taylor's mother and her medical records, which indicate that she has a number of conditions, including hypertension, vision loss in her left eye, degenerative disk disease, and leg edema, and has difficulty traveling. However, while Taylor states that his father, stepfather, and two uncles have passed away since his incarceration began, there is no suggestion that Taylor's mother is without a caregiver. To the contrary, her medical records indicate that a son accompanied her to her last appointment in May 2025 and her daughter joined via phone. R. 138 at 2. Likewise, while it is regrettable that Taylor's son was threatened by a student who brought a gun to school in 2014, and that there was an active shooter event near his daughter's school in 2015, he does not indicate that there is a present threat to his children's

safety or that they are without a caregiver.[2] For those reasons, the family circumstances cited by Taylor fall short of an extraordinary and compelling reason for his release.

e. Rehabilitative Efforts

Taylor also argues that his rehabilitative efforts while incarcerated warrant compassionate release. "[R]ehabilitation cannot serve as a stand-alone reason for compassionate release." *United States v. Peoples*, 41 F.4th 837, 842 (7th Cir. 2022). While § 1B1.13(d) permits the Court to consider rehabilitation "in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted," as previously discussed, Taylor has not pointed to any other circumstances that support compassionate release. Further, Taylor's prison disciplinary record reflects multiple violations for possessing a dangerous weapon, as recently as December 2022, and for assaulting an individual without serious injury, as recently as November 2021.[3] While Taylor should be commended for participating in therapy, enrolling in a psychology course, and completing courses on anger management, emotional awareness, parenting, forgiveness, and job-related skills, these rehabilitative efforts are not an extraordinary and compelling reason for his release. *See United States v. Grant*, No. 14-CR-30039-SPM, 2024 WL 5137539, at *2 (S.D. Ill. Dec. 17, 2024) (holding that

---

[2] A letter submitted by Taylor's son's mother indicates that she is the primary caregiver. R. 137.
[3] Although the government did not attach the underlying records, Taylor confirms in his reply that these incidents occurred.

defendant's rehabilitative steps, viewed alongside a "less than stellar" disciplinary record and without other circumstances supporting compassionate release, were not an extraordinary and compelling reason).

In sum, the Court finds that Taylor has not established an extraordinary or compelling reason, either individually or in the aggregate, for a reduction in his sentence. For that reason, the Court need not discuss whether the § 3553(a) factors favor release. *See United States v. Ugbah*, 4 F.4th 595, 598 (7th Cir. 2021) (where a defendant "cannot establish an extraordinary and compelling reason for release, it [i]s unnecessary for the district judge to consider the § 3553(a) factors at all").

## Conclusion

For the foregoing reasons, Taylor's motion for compassionate release is denied.

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: July 7, 2025